# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RONALD LEE PRESTON RUPP,<br><br>Defendant. | No. CR04-4025-DEO<br><br>**REPORT AND RECOMMENDATION ON PETITION TO REVOKE SUPERVISED RELEASE** |

This case is before me on a petition (Doc. No. 73) (the Petition) to revoke defendant Ronald Rupp's supervised release. The Honorable Donald E. O'Brien has referred the Petition to me for the issuance of a report and recommended disposition. Doc. No. 78. I held an evidentiary hearing on February 12, 2015. Plaintiff (the Government) was represented by Assistant United States Attorney Jack Lammers. United States Probation Officer Dustin Lutgen was also present. Rupp appeared in person and with his attorney, R. Scott Rhinehart. During the hearing, Rupp admitted (through counsel) the violations described in the Petition as alleged Violation Nos. 1, 2, 3, 4, 5, 6, 7, 8 and 13. He denied alleged Violation Nos. 9, 10, 11(a), 11(b), 11(c) and 12.

The Government called Lutgen as a witness, as well as Sioux City Police Officer William Enockson. Rupp called Brittney Vondrak as a witness and also offered one exhibit, Defense Exhibit A, which was received into evidence with no objection. I advised Rupp of his right to make a statement but he elected not to do so.

## I. FINDINGS OF FACT

On September 8, 2004, Rupp was sentenced to 92 months imprisonment[1] and a four-year term of supervised release (TSR) based on his pleas of guilty to (a) conspiracy

---

[1] Rupp has filed a motion (Doc. No. 86) to dismiss the petition in which he argues, among other

to distribute 50 grams or more of methamphetamine mixture and (b) distribution of 50 grams of methamphetamine mixture. *See* Doc. Nos. 37. After completing his prison term, Rupp began serving his TSR on February 25, 2011. He is currently serving his second TSR in this case. The circumstances that led to the revocation of his first TSR are set forth in various prior filings (Doc. Nos. 54, 56, 57, 62, 66 and 67) and are incorporated herein by reference.

Judge O'Brien revoked Rupp's first TSR on January 4, 2013, sentenced him to time served and ordered that he be released on supervision for the remainder of his original term, which is scheduled to expire February 24, 2015.[2] Doc. No. 67. On October 21, 2013, Rupp's TSR was modified and Judge O'Brien ordered that Rupp perform sixty hours of community service prior to December 31, 2013. Doc. No. 70. On January 10, 2014, Judge O'Brien further modified his TSR by ordering him to complete ten additional hours of community service prior to February 28, 2014. Doc. No. 71. On August 14, 2014, Judge O'Brien again modified Rupp's TSR and ordered him to complete 20 additional community service hours. Doc. No. 72. These modifications were the result of the following violations: use of a controlled substance,

---

things, that an alternative sentence of 60 months, as described in the original judgment, should have applied. That motion is pending with Judge O'Brien. For purposes of this Report and Recommendation, I will assume that the 92-month sentence is accurate. Rupp also objected to Judge O'Brien's referral of the petition to a United States Magistrate Judge for the preparation of a Report and Recommendation. Again, that objection is pending before Judge O'Brien. Doc. No. 86. I note that Judge O'Brien made the referral pursuant to *United States v. Azure*, 539 F.3d 904 (8th Cir. 2008). Doc. No. 78.

[2] A summons on the Petition was issued to Rupp on February 2, 2015. *See* Doc. No. 73-1. This tolled the expiration of Rupp's TSR, meaning he remains subject to the conditions of his TSR while these revocation proceedings are pending. *See* 18 U.S.C. § 3583(i); *United States v. English*, 400 F.3d 273, 275-76 (5th Cir. 2005). Moreover, at the conclusion of the hearing I released Rupp pursuant to Federal Rule of Criminal Procedure 32.1(a)(6), on condition that he will continue to be subject to the existing terms of his TSR. In short, Rupp will not be discharged from the terms and conditions of his TSR on February 24, 2015.

failure to report change in employment, failure to complete community service, failure to report contact with law enforcement, travel outside the judicial district without permission and failure to complete monthly reporting. *See* Petition at alleged Violation Nos. 1 through 6. As noted above, Rupp admits those violations.

The new alleged violations, which are described in the Petition as Violation Nos. 7 through 13, commenced on September 3, 2014. On that date, Rupp admits that he provided false information to Lutgen about an encounter he had with law enforcement on August 29, 2014. This constitutes alleged Violation No. 7 (false statement to Probation). Because Rupp has admitted the alleged conduct, I find that this violation occurred.

On October 23, 2014, Rupp had a discussion with Lutgen about an acquaintance, Nicole Ramirez. Rupp stated that Ramirez is a drug user and acknowledged that he had been associating with her. This constitutes alleged Violation No. 8 (association with person engaged in criminal activity). Because Rupp has admitted the alleged conduct, I find that this violation occurred. During their discussion, Lutgen directed Rupp to have no further contact with Ramirez.

On October 24, 2014, Rupp reported for random urinalysis but was unable to void a sufficient amount of urine for testing. This constitutes alleged Violation No. 9 (failure to comply with drug testing). Because the Government presented no evidence that this was intentional, or that similar incidents happened on other occasions, I find that the Government did not prove this violation.

On October 27, 2014, Lutgen received separate communications from Rupp and Ramirez to the effect that Ramirez had switched Rupp's e-cigarette with one that had "dope" in it. In effect, if the communications were accurate, Ramirez set Rupp up for a violation by causing him to ingest a controlled substance. Lutgen directed Rupp to report for urinalysis. The result was positive for methamphetamine. This constitutes alleged Violation No. 10 (use of a controlled substance). Based on the evidence presented during

3

the hearing, the Government indicated that it is not asking the court to make a finding that this incident amounted to a violation. As such (and because I agree), I find that the Government did not prove this violation.

On November 21, 2014, Rupp contacted Lutgen and advised him that he had been in a traffic accident and had been cited for failure to stop within an assured clear distance and failure to provide proof of insurance. Lutgen then confirmed that the incident had occurred on November 17, 2014, and that Rupp had been cited consistent with his report. This constitutes alleged Violation No. 11(a) (law violation). Based on Lutgen's testimony that Rupp admitted the relevant events, I find that the Government proved this violation.

On December 7, 2014, Rupp was involved in an incident that forms the basis of the most hotly-contested allegation, which is alleged Violation 11(b) (law violation). The basic facts are not in great dispute, and are established by Enockson's testimony. At approximately 2:50 a.m., Enockson was on patrol in full uniform and driving a marked police vehicle. He observed a white truck stopped on a city street with its brake lights on and the engine running. He stopped to investigate and observed the driver, who turned out to be Rupp, sleeping or otherwise unresponsive in the driver's seat, slumped slightly over to the right. Enockson also noted that the vehicle was in "Drive," but was not moving because the brakes were being applied. Enockson called for backup from his cover officer and intended to wait for that officer to arrive. However, the vehicle began to move forward slowly, apparently due to decreased pressure being applied to the brake pedal. At that point, Enockson felt that he had no choice but to awake the driver. He knocked on the driver's window while shining his flashlight through it. He then saw Rupp awaken and look toward him. Rupp yelled "Oh shit!" and accelerated quickly, squealing the truck's tires on dry pavement.

Enockson radioed that Rupp was fleeing and then got into his squad car to give chase. The cover officer's patrol car arrived at this time, heading directly toward Rupp's

direction of travel. It appeared to Enockson that the vehicles were about to collide, but Rupp suddenly swerved to the right, driving through a yard and hitting two mailboxes before swerving back onto the roadway. These actions caused items to fall from the back of Rupp's truck. Rupp continued to drive away with both squad cars in pursuit, with lights and sirens activated. Rupp traveled at a speed Enockson estimated to be roughly 40 mile per hour. He made a right turn at one intersection and a left turn at another, but lost control during the left turn and drove into an adjacent field, hitting some trees. As the cover officer approached the truck on foot, Rupp again attempted to drive away, turning and accelerating in a manner that, according to Enockson, almost caused Rupp's truck to hit the cover officer. During this process, Rupp rolled the truck down a hill, causing it to land with its driver's side down.

Rupp was apprehended at this point. When questioned, he first stated that he had no recollection as to how he ended up being asleep in his vehicle on the city street. Later, he stated that he had dropped his girlfriend's friend off in that part of town, but did not remember the address. At the law enforcement center, Rupp was booked and evaluated for possible intoxication, but was not found to be under the influence of alcohol or drugs. When booked, a burnt roach was found in one of his pockets. The remnants did not test positive for marijuana and Rupp was not charged with possession of illegal drugs.[3] He was, however, charged with serious eluding. That charge is pending in the Iowa District Court for Woodbury County. Over $8,000 in cash was found on Rupp's person and in his truck after the incident.

---

[3] Alleged Violation No. 12 (possession of a controlled substance) is based on the burnt roach found in Rupp's pocket. In light of testimony that the roach did not test positive for marijuana, the Government indicated that it is not asking the court to make a finding that Rupp committed this alleged violation. As such (and because I agree), I find that the Government did not prove alleged Violation No. 12.

5

Rupp presented evidence during the hearing that he suffers from a sleeping disorder – possibly narcolepsy. His witness, Vondrak, testified that he often falls asleep unexpectedly, sometimes while driving, and that he is prone to reacting dramatically if awakened. He also presented a note (Exhibit A) from a physician dated February 4, 2015, which states that Rupp should undergo a sleep study for narcolepsy or another sleep disorder. Rupp argued, through counsel, that he did not attempt to flee during the December 7 incident but, instead, had a sudden and dramatic reaction to being awakened by Enockson. Based on the evidence presented, I reject this explanation. Rupp's verbal reaction to seeing a uniformed police officer ("Oh shit!"), followed by a series of elusive actions (including swerving around one patrol car, making multiple turns and attempting to drive away again after hitting trees), hardly indicates an involuntary, reflexive reaction. I find that Rupp intended to flee and stopped only because he rolled his vehicle during evasive maneuvers. Thus, and although he has not been convicted on the charge of serious eluding, I find the Government has proved by a preponderance of the evidence that Rupp committed the violation described in the Petition as alleged Violation No. 11(b) (law violation).

On January 6, 2015, the Sioux City Police Department investigated a complaint about two people in a Dollar Store parking lot. Upon arrival, they discovered Rupp in a vehicle with Ramirez, despite Lutgen's prior direction that Rupp have no contact with Ramirez. This constitutes alleged Violation No. 13 (failure to follow Probation's instructions). Because Rupp has admitted the alleged conduct, I find that this violation occurred.

On January 21, 2015, Rupp was involved in another traffic incident. A Sioux City Police Officer found him sleeping in his vehicle at a railroad crossing at approximately 2:00 a.m. When awakened, he drove his vehicle off the road and was cited for failure to maintain control. Rupp contacted Lutgen the following day to advise

him of the incident. This constitutes alleged Violation No. 11(c) (law violation). Based on Lutgen's testimony that Rupp admitted the relevant events, I find that the Government proved this violation.

To summarize, Rupp admitted alleged Violation Nos. 1, 2, 3, 4, 5, 6, 7, 8 and 13 and I find that the Government proved Violation Nos. 11(a), 11(b) and 11(c) by a preponderance of the evidence. I further find that the Government did not prove alleged Violation Nos. 9, 10 and 12.

## II.  ANALYSIS

"A district court may revoke supervised release if it 'finds by a preponderance of the evidence that the defendant violated a condition of supervised release.'" *United States v. Holt*, 664 F.3d 1147, 1149 (8th Cir. 2011) (quoting 18 U.S.C. § 3583(e)(3)). The court's finding that a defendant has violated the conditions of supervised release is reviewed for clear error, while an order of revocation based on such a finding is reviewed for abuse of discretion. *United States v. Carothers*, 337 F.3d 1017, 1019 (8th Cir. 2003).

As discussed above, I find by a preponderance of the evidence that Rupp violated numerous terms and conditions of his supervised release, as alleged in the Petition. Having so found, 18 U.S.C. § 3583(e) requires that I consider certain factors set forth in 18 U.S.C. § 3553(a) in making a determination as to whether Rupp's term of supervised release should be terminated, extended, modified, or revoked. Although I am not required to cite each relevant factor in § 3553(a), *see United States v. Franklin*, 397 F.3d 604, 607 (8th Cir. 2005), those factors are set forth below for the convenience of the district court in reviewing this Report and Recommendation:

> The court, in determining the particular sentence to be imposed, shall consider –
>
> > (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

. . . .

(4) the kinds of sentence and the sentencing range established for –

. . . .

    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement –

    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced[;]

> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (as referenced in 18 U.S.C. § 3583(e)). After considering these factors, I may recommend the termination, extension, revocation or modification of the term of supervised release as set forth in § 3583(e).[4]

Probation recommends that Rupp's supervised release be revoked and that he be sentenced to fourteen months imprisonment with a one-year term of TSR to follow. During the hearing, the Government joined this recommendation while Rupp, through counsel, argued that no consequence is necessary except, perhaps, a few weekends in jail.

### A. Nature and Circumstances of Offense, and Rupp's History and Characteristics

Rupp's original offenses were conspiracy to distribute 50 grams or more of methamphetamine mixture and distribution of 50 grams of methamphetamine mixture. He had a Criminal History Category of VI at the time of sentencing in 2004. His criminal record prior to 2004 included convictions for assault, burglary, theft, simple eluding, and possession of a controlled substance. *See* Doc. No. 76-1 at 8-16. Rupp has a history of substance abuse and has repeatedly violated the conditions of TSR by using controlled substances, failing to comply with substance abuse testing requirements and possessing controlled substances. He also has a history of providing false information to Probation.

---

[4] Probation indicated that revocation is mandatory pursuant to 18 U.S.C. § 3583(g) because one violation involved the possession of a controlled substance. See Doc. No. 76 at 3. However, that alleged violation (Violation No. 12) was not proved. Thus, I find that revocation is not mandatory.

9

His first TSR was revoked and his second TSR has already been modified three times due to various violations. *See* Doc. No. 73 at 1-3. Given Rupp's history and characteristics, and particularly his repeated decisions to violate the conditions of his TSR, I find that revocation and a term of incarceration is necessary.

B.   *Deterrence of Criminal Conduct*

Any revocation or modification of supervised release must "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). Rupp's first TSR was revoked due to numerous violations, including use and possession of controlled substances, false statements to Probation, failure to comply with drug testing and engaging in criminal activity. At that time, he received a relatively lenient revocation sentence of time served. As discussed in detail above, that revocation and sentence did not deter Rupp from engaging in criminal conduct. He used a controlled substance (Violation No. 1) and committed three law violations (Violation Nos. 11(a), 11(b) and 11(c)), including one involving a motor vehicle chase that caused property damage and created a risk of personal injury to law enforcement and/or the public. I find that incarceration is necessary to deter further criminal conduct by Rupp.

C.   *Protection of the Public from Further Crimes*

Any revocation or modification of supervised release must protect the public from further crimes. 18 U.S.C. § 3553(a)(2)(C). As discussed above, Rupp committed further crimes while on supervised release, including failure to stop, failure to maintain control, failure to prove security against liability, eluding and possession of a controlled substance. I find that incarceration is necessary to protect the public from further crimes by Rupp.

## D. Educational or Vocational Training, Medical Care, or Other Correctional Treatment

Probation does not recommend educational or vocational training or medical care at this time. There is no basis in the record to suggest that such a need exists.

## E. Sentencing Considerations

I am required to consider pertinent policy statements issued by the United States Sentencing Commission in effect at the time of Rupp's sentencing. 18 U.S.C. § 3553(a)(5). The policy statement entitled Classification of Violations, U.S.S.G. § 7B1.1, sets forth three grades of supervised release violations. Rupp's violations are Grade C violations, which consist of "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision." The policy statement entitled Revocation of Probation or Supervised Release, U.S.S.G. § 7B1.3(a)(2), states: "Upon a finding of a Grade C violation, the court may (A) revoke probation or supervised release; or (B) extend the term of probation or supervised release and/or modify the conditions of supervision." Finally, the policy statement entitled Term of Imprisonment, U.S.S.G. § 7B1.4(a), states that the recommended range of imprisonment for a Grade C violation at Criminal History Category VI is eight to fourteen months.

The maximum statutory term of imprisonment is three years and the maximum statutory term of supervised release is life. 18 U.S.C. §§ 3583(e)(3), 3583(h); 21 U.S.C. § 841(b)(1)(B)(viii).

## F. Sentencing Disparities

The final consideration is whether my recommended disposition will result in "unwarranted sentence disparities among defendants with similar records who have been

found guilty of similar conduct[.]" 18 U.S.C. § 3553(a)(6). The parties offered no evidence on this issue and I have no information to suggest that this is the case.

### G. *Recommendation*

The Eighth Circuit has

> required that courts consider the policy statements in Chapter 7 [of the Sentencing Guidelines] when sentencing a violator of supervised release and [has] concluded that the suggested ranges in U.S.S.G. § 7B1.4(a) are only advisory. There are "no binding guidelines addressing the sentence for a violation of a condition of supervised release, only a policy statement about a court's options in such a situation."

*United States v. White Face*, 383 F.3d 733, 738 (8th Cir. 2004) (citation omitted) (quoting *United States v. Oliver*, 931 F.2d 463, 465 (8th Cir. 1991)). Failure to provide written reasons for sentencing outside the applicable policy statement range for revocation sentences is not reversible error, although written statements of reasons are helpful for the parties, reviewing courts, and the Sentencing Commission. *Id.* at 739; *accord United States v. Jones*, 973 F.2d 605, 607-08 (8th Cir. 1992) ("Because the Chapter 7 policy statements are not binding, the court is not required to make the explicit, detailed findings required when it departs upward from a binding guideline."). "The district court is free to depart from Chapter 7's suggested sentences when, in its considered discretion, such a departure is warranted." *United States v. Carr*, 66 F.3d 981, 983 (8th Cir. 1995) (per curiam); *accord United States v. Jasper*, 338 F.3d 865, 867 (8th Cir. 2003).

I have given careful consideration to the factors set forth in 18 U.S.C. § 3553(a), and hereby recommend that Rupp's TSR be revoked and that he be sentenced to six months of incarceration. I find it to be appropriate because (a) this is Rupp's second revocation, (b) the prior revocation sentence of time served was ineffective and (c) Rupp has committed a large number of violations. I further recommend that a new, one-year term of supervised release be imposed upon Rupp's release.

I find that the disposition recommended herein will further the goals of deterrence and incapacitation, reflects the seriousness of Rupp's conduct and provides just punishment for such conduct. I further find that this recommendation is "sufficient, but not greater than necessary, to comply with" the sentence's purposes as set forth in § 3553(a)(2) and will not result in any sentencing disparities. *See* 18 U.S.C. § 3553(a).

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, I RESPECTFULLY RECOMMEND that the Government's petition (Doc. No. 73) to revoke Rupp's supervised release be **granted** and that Rupp be sentenced to six (6) months incarceration with an additional one-year term of supervised release to follow.

As explained above (note 2, *supra*), Rupp is not in custody but remains subject to the existing conditions of his TSR while these proceedings are pending.

Objections to this Report and Recommendation must be filed **by February 27, 2015**. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72; Fed. R. Crim. P. 59. Responses to objections must be filed no later than **fourteen (14) days** after the objections are served.

**IT IS SO ORDERED.**

**DATED** this 13th day of February, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE