**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    Plaintiff,<br><br>vs.<br><br>**RONALD LEE PRESTON RUPP,**<br><br>    Defendant. | **No. 04-CR-4025-DEO**<br><br>**ORDER ON REPORT AND RECOMMENDATION and DEFENDANT'S MOTION TO DISMISS** |

Before the Court is a Report and Recommendation ("R&R") issued by United States Magistrate Judge Leonard T. Strand concerning the USA's Petition to Revoke Supervised Release (Docket No. 73). Docket No. 89. Following the hearing on February 12, 2015, Judge Strand issued the Report and Recommendation. On February 23, 2015, Mr. Rupp filed an Objection to the R&R. Docket No. 90.

Also presently before the Court is the Defendant's Motion to Dismiss, Docket No. 86. The Court directed the Government to file a Response to all pending matters, which it did on March 31, 2015. Docket No. 91. In its Response, the Government asks the Court to adopt Magistrate Strand's Report and Recommendation and deny the Motion to Dismiss.

The Court held a hearing on the pending matters on April 2, 2015. On that same date, the Government filed a Supplemental Petition to Revoke, Docket No. 101. In their Supplemental Petition, Docket No. 101, the Government alleges that Mr. Rupp committed various violations when he was arrested on April 1, 2015. After conferring with the parties during the hearing, the Court determined that it would not consider the Supplemental Petition, Docket No. 101, prior to ruling on the above mentioned issues. The Court stated that it would consider the Supplemental Petition, Docket No. 101, during a subsequent hearing on a date to be determined.

After listening to the parties' arguments related to the R&R and the Motion to Dismiss, the Court took the matters under advisement and now enters the following.

I. **BACKGROUND AND FINDINGS OF FACT**

On September 8, 2004, Rupp was sentenced to 92 months of incarceration and four years of supervised release based on his pleas of guilty to (a) conspiracy to distribute 50 grams or more of methamphetamine mixture and (b) distribution of 50 grams of methamphetamine mixture. See Docket No. 37. After completing his federal prison term, Rupp began serving his

2

term of supervised release (TSR) on February 25, 2011. Judge Strand discussed Mr. Rupp's TSR history, stating:

> Judge O'Brien revoked Rupp's first TSR on January 4, 2013, sentenced him to time served and ordered that he be released on supervision for the remainder of his original term, which is scheduled to expire February 24, 2015.[1] Doc. No. 67. On October 21, 2013, Rupp's TSR was modified and Judge O'Brien ordered that Rupp perform sixty hours of community service prior to December 31, 2013. Doc. No. 70. On January 10, 2014, Judge O'Brien further modified his TSR by ordering him to complete ten additional hours of community service prior to February 28, 2014. Doc. No. 71. On August 14, 2014, Judge O'Brien again modified Rupp's TSR and ordered him to complete 20 additional community service hours. Doc. No. 72. These modifications were the result of the following violations: use of a controlled substance, failure to report change in employment, failure to complete community service, failure to report contact with law enforcement, travel outside the judicial district without permission and failure to

---

[1] A summons on the Petition was issued to Rupp on February 2, 2015. See Doc. No. 73, Att. 1. The summons tolled the expiration of Mr. Rupp's TSR, meaning he remains subject to the conditions of his TSR while these revocation proceedings are pending. See 18 U.S.C. § 3583(i); United States v. English, 400 F.3d 273, 275-76 (5th Cir. 2005). At the conclusion of the revocation hearing, Judge Strand released Rupp pursuant to Federal Rule of Criminal Procedure 32.1(a)(6), on condition that he will continue to be subject to the existing terms of his TSR. Accordingly, Mr. Rupp's TSR did not expire on February 24, 2015.

> complete monthly reporting. See Petition
> at alleged Violation Nos. 1 through 6. As
> noted above, Rupp admits those violations.

Docket No. 89, p. 2-3.

Judge Strand then set out the violations presently before the Court and his factual findings:

> [t]he new alleged violations, which are
> described in the Petition as Violation Nos.
> 7 through 13, commenced on September 3,
> 2014. On that date, Rupp admits that he
> provided false information to Lutgen about
> an encounter he had with law enforcement on
> August 29, 2014. This constitutes alleged
> Violation No. 7 (false statement to
> Probation). Because Rupp has admitted the
> alleged conduct, I find that this violation
> occurred. On October 23, 2014, Rupp had a
> discussion with Lutgen about an
> acquaintance, Nicole Ramirez. Rupp stated
> that Ramirez is a drug user and
> acknowledged that he had been associating
> with her. This constitutes alleged
> Violation No. 8 (association with person
> engaged in criminal activity). Because
> Rupp has admitted the alleged conduct, I
> find that this violation occurred. During
> their discussion, Lutgen directed Rupp to
> have no further contact with Ramirez. On
> October 24, 2014, Rupp reported for random
> urinalysis but was unable to void a
> sufficient amount of urine for testing.
> This constitutes alleged Violation No. 9
> (failure to comply with drug testing).
> Because the Government presented no
> evidence that this was intentional, or that
> similar incidents happened on other
> occasions, I find that the Government did
> not prove this violation. On October 27,

4

2014, Lutgen received separate communications from Rupp and Ramirez to the effect that Ramirez had switched Rupp's e-cigarette with one that had "dope" in it. In effect, if the communications were accurate, Ramirez set Rupp up for a violation by causing him to ingest a controlled substance. Lutgen directed Rupp to report for urinalysis. The result was positive for methamphetamine. This constitutes alleged Violation No. 10 (use of a controlled substance). Based on the evidence presented during the hearing, the Government indicated that it is not asking the court to make a finding that this incident amounted to a violation. As such (and because I agree), I find that the Government did not prove this violation.

On November 21, 2014, Rupp contacted Lutgen and advised him that he had been in a traffic accident and had been cited for failure to stop within an assured clear distance and failure to provide proof of insurance. Lutgen then confirmed that the incident had occurred on November 17, 2014, and that Rupp had been cited consistent with his report. This constitutes alleged Violation No. 11(a) (law violation). Based on Lutgen's testimony that Rupp admitted the relevant events, I find that the Government proved this violation.

On December 7, 2014, Rupp was involved in an incident that forms the basis of the most hotly-contested allegation, which is alleged Violation 11(b) (law violation). The basic facts are not in great dispute, and are established by Enockson's testimony. At approximately 2:50 a.m., Enockson was on patrol in full uniform and driving a marked police vehicle. He

5

observed a white truck stopped on a city street with its brake lights on and the engine running. He stopped to investigate and observed the driver, who turned out to be Rupp, sleeping or otherwise unresponsive in the driver's seat, slumped slightly over to the right. Enockson also noted that the vehicle was in "Drive," but was not moving because the brakes were being applied. Enockson called for backup from his cover officer and intended to wait for that officer to arrive. However, the vehicle began to move forward slowly, apparently due to decreased pressure being applied to the brake pedal. At that point, Enockson felt that he had no choice but to awake the driver. He knocked on the driver's window while shining his flashlight through it. He then saw Rupp awaken and look toward him. Rupp yelled "Oh shit!" and accelerated quickly, squealing the truck's tires on dry pavement.

Enockson radioed that Rupp was fleeing and then got into his squad car to give chase. The cover officer's patrol car arrived at this time, heading directly toward Rupp's direction of travel. It appeared to Enockson that the vehicles were about to collide, but Rupp suddenly swerved to the right, driving through a yard and hitting two mailboxes before swerving back onto the roadway. These actions caused items to fall from the back of Rupp's truck. Rupp continued to drive away with both squad cars in pursuit, with lights and sirens activated. Rupp traveled at a speed Enockson estimated to be roughly 40 mile per hour. He made a right turn at one intersection and a left turn at another, but lost control during the left turn and drove into an adjacent field, hitting some

trees. As the cover officer approached the truck on foot, Rupp again attempted to drive away, turning and accelerating in a manner that, according to Enockson, almost caused Rupp's truck to hit the cover officer. During this process, Rupp rolled the truck down a hill, causing it to land with its driver's side down. Rupp was apprehended at this point. When questioned, he first stated that he had no recollection as to how he ended up being asleep in his vehicle on the city street. Later, he stated that he had dropped his girlfriend's friend off in that part of town, but did not remember the address. At the law enforcement center, Rupp was booked and evaluated for possible intoxication, but was not found to be under the influence of alcohol or drugs. When booked, a burnt roach was found in one of his pockets. The remnants did not test positive for marijuana and Rupp was not charged with possession of illegal drugs.[2] He was, however, charged with serious eluding. That charge is pending in the Iowa District Court for Woodbury County. Over $8,000 in cash was found on Rupp's person and in his truck after the incident.

Rupp presented evidence during the hearing that he suffers from a sleeping disorder – possibly narcolepsy. His witness, Vondrak, testified that he often falls asleep unexpectedly, sometimes while driving, and that he is prone to reacting dramatically if awakened. He also presented a note (Exhibit A) from a physician dated February 4, 2015, which states that Rupp should

---

[2] Based on this, Judge Strand determined that the Government had failed to prove allegation 12.

undergo a sleep study for narcolepsy or another sleep disorder. Rupp argued, through counsel, that he did not attempt to flee during the December 7 incident but, instead, had a sudden and dramatic reaction to being awakened by Enockson. Based on the evidence presented, I reject this explanation. Rupp's verbal reaction to seeing a uniformed police officer ("Oh shit!"), followed by a series of elusive actions (including swerving around one patrol car, making multiple turns and attempting to drive away again after hitting trees), hardly indicates an involuntary, reflexive reaction. I find that Rupp intended to flee and stopped only because he rolled his vehicle during evasive maneuvers. Thus, and although he has not been convicted on the charge of serious eluding, I find the Government has proved by a preponderance of the evidence that Rupp committed the violation described in the Petition as alleged Violation No. 11(b) (law violation).

On January 6, 2015, the Sioux City Police Department investigated a complaint about two people in a Dollar Store parking lot. Upon arrival, they discovered Rupp in a vehicle with Ramirez, despite Lutgen's prior direction that Rupp have no contact with Ramirez. This constitutes alleged Violation No. 13 (failure to follow Probation's instructions). Because Rupp has admitted the alleged conduct, I find that this violation occurred. On January 21, 2015, Rupp was involved in another traffic incident. A Sioux City Police Officer found him sleeping in his vehicle at a railroad crossing at approximately 2:00 a.m. When awakened, he drove his vehicle off the road and was cited for

> failure to maintain control. Rupp contacted Lutgen the following day to advise him of the incident. This constitutes alleged Violation No. 11(c) (law violation). Based on Lutgen's testimony that Rupp admitted the relevant events, I find that the Government proved this violation. To summarize, Rupp admitted alleged Violation Nos. 1, 2, 3, 4, 5, 6, 7, 8 and 13 and I find that the Government proved Violation Nos. 11(a), 11(b) and 11(c) by a preponderance of the evidence. I further find that the Government did not prove alleged Violation Nos. 9, 10 and 12.

Docket No. 89, p. 3-7.

During the hearing, both parties stated that they had no objection Magistrate Strand's factual findings. Accordingly, the Court will accept and adopt Magistrate Strand's findings.

## II. MOTION TO DISMISS

In his Motion to Dismiss, Mr. Rupp raises two issues. First, he argues the Court should have imposed an alternate sentence following the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220, 221 (2005).[3] Second, Mr. Rupp

---

[3] There is no dispute that at sentencing, this Court imposed an alternate sentence to be imposed if the Federal Sentencing Guidelines were found to be unconstitutional. The alternate sentence would have been substantially shorter than the guidelines' sentence.

argues that Magistrate Judge Strand should not have held the initial hearing in this matter.

This Court addressed the alternate sentence issue in a previous Order. While incarcerated, Mr. Rupp filed a pro se Motion arguing that the Court should impose the alternate sentence.[4] On February 24, 2011, this Court entered an Order stating:

> the Court issued an alternative sentence of 60 months only if it was "later found that [Blakely v. Washington, 542 U.S. 296 (2004)] rendered the guidelines unconstitutional as a whole." Docket No. 36... The minutes noted that if the guidelines were unconstitutional as a whole, the sentencing range would have been the statutory minimum and maximum sentences of 5-40 years imprisonment. The United States Sentencing Guidelines, while later found to be advisory, were never rendered unconstitutional as a whole. Thus, Defendant's motion also fails on the merits.

Docket No. 49, p. 1-2. Thus, this Court already considered whether it should have imposed Mr. Rupp's alternate sentence and declined to do so.

---

[4] At the time Mr. Rupp initially filed his pro se Motion, the Courts were still clarifying the impact of the Booker decision.

10

Additionally, as Defendant's counsel eventually conceded during the hearing on this matter, the Federal Sentencing Guidelines have never been ruled unconstitutional as a whole. Rather, <u>Booker</u>, <u>Blakely</u>, and the other relevant cases have allowed the Guidelines to persist in an advisory position. Because the alternate sentence would only take effect if the Guidelines were found unconstitutional as a whole, and the Guidelines remain in effect, this Court has no authority to impose the alternate sentence.[5]

Second, Mr. Rupp argues that this Court should not have referred the revocation petition to Judge Strand for an R&R. As stated in both the Government's Response, Docket No. 97, and this Court's Order, Docket No. 78, referring the petition to Judge Strand, it is well settled law that the Court can designate a Federal Magistrate Judge to conduct hearings to modify, revoke, or terminate supervised release, including evidentiary hearings, and to submit to the Court proposed

---

[5] Additionally, as noted by the Government, even if the Court could impose the alternate sentence, a revocation proceeding would not be the proper procedural mechanism to do so.

findings of fact and recommendations. The Defendant's arguments to the contrary are simply incorrect.

**III. REPORT AND RECOMMENDATION STANDARD**

Next, the Court will consider the Report and Recommendation itself. Pursuant to statue, in reviewing a Report and Recommendation:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1).

Similarly, Federal Rule of Civil Procedure 72(b) provides for review of a magistrate judge's Report and Recommendation on dispositive motions and prisoner petitions, where objections are made as follows:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the

> recommendation decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b).

Additionally, failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. <u>United States v. Wise</u>, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

## IV. REPORT AND RECOMMENDATION ANALYSIS

The Court has considered the Magistrate's Report and Recommendation and agrees that Mr. Rupp violated the terms of his supervised release as stated by the Magistrate. Having so found, 18 U.S.C. § 3583(e) requires the Court consider certain specified factors set forth in 18 U.S.C. § 3553(a) to determine whether Mr. Rupp's term of supervised release should be terminated, extended, modified, or revoked. Magistrate Strand considered those factors, and, as stated above, found that Mr. Rupp's TSR should be revoked and he should be sentenced to 6 months incarceration with one year TSR to follow.

Mr. Rupp filed an Objection to the Report and Recommendation, arguing that because Judge Strand referenced violations 1-6, which were the subject of a prior revocation proceeding, his recommended sanction violates the prohibition on double jeopardy.[6]  See Docket No. 90.  The Government responded to the Objection by stating:

> Defendant cites to no case law that supports this proposition, rather he cites to case law in opposition to his assertions.  In fact, case law contradicts his proposition.  In United States v. Bennett, 561 F.3d 799 (8th Cir. 2009)[,] the Court held that it was no violation of double jeopardy to allow additional hearings and additional evidence after continuing the revocation proceedings.

Docket No. 97, p. 3.  The Government went on to cite United States v. Bennett, 561 F.3d 799 (8th Cir. 2009).  In that case, the 8th Circuit Court of Appeals consider a double jeopardy claim in the context of a revocation hearing and stated:

> [t]he Double Jeopardy Clause of the Fifth Amendment states that no person shall 'be subject for the same offence to be twice

---

[6]  In his Objection, Mr. Rupp also argues that this Court should not have referred this matter to the Magistrate Judge.  The Court discussed this issue above and found the matter was properly referred to Judge Strand.

put in jeopardy of life or limb.' U.S. Const. amend. V. 'This protection applies both to successive punishments and to successive prosecutions for the same criminal offense.' <u>United States v. Dixon</u>, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L. Ed. 2d 556 (1993). A hearing to determine whether supervised release should be revoked, however, is not a criminal prosecution. See <u>Morrissey</u>, 408 U.S. [471] at 489, 92 S.Ct. 2593; <u>Ray</u>, 530 F.3d [666] at 668; <u>United States v. House</u>, 501 F.3d 928, 931 (8th Cir. 2007). Moreover, the revocation of supervised release is a penalty attributable to the original conviction, not a new punishment. <u>Johnson v. United States</u>, 529 U.S. 694, 700-01, 120 S. Ct. 1795, 146 L. Ed. 2d 727 (2000). <u>Bennett</u>, therefore, was not at risk for either successive prosecution or successive punishment at the multiple revocation hearings, and double jeopardy concerns did not arise. See Id. (recognizing that issues of double jeopardy are not raised by the revocation of supervised release because revocation is a penalty attributable to the original conviction, not a new punishment); <u>Monge v. California</u>, 524 U.S. 721, 728, 118 S. Ct. 2246, 141 L. Ed. 2d 615 (1998) (reiterating that 'double jeopardy protections [are] inapplicable to sentencing proceedings ... because the determinations at issue do not place a defendant in jeopardy for an 'offense'' ); <u>United States v. Dees</u>, 467 F.3d 847, 853-54 (3d Cir. 2006) (ruling that the Double Jeopardy Clause was not violated when the district court revoked three concurrent terms of supervised release-and thereby imposed three consecutive terms of imprisonment-based on the same conduct), cert. denied, --- U.S. ----, 128 S.Ct. 52,

> 169 L.Ed.2d 45 (2007). Bennett's
> constitutional arguments fail. We hold
> that the District Court did not abuse its
> discretion by continuing Bennett's
> revocation hearing or by revoking her term
> of supervised release.

Bennett, 561 F.3d at 802-03.

Similarly, in this case, Mr. Rupp's double jeopardy argument fails. As noted by the 8th Circuit in the Bennett decision, double jeopardy concerns do not attach in a revocation proceeding because a revocation proceeding does not amount to either a previous or subsequent prosecution. Mr. Rupp cannot raise a double jeopardy argument because this revocation is not a prosecution, nor was the prior revocation.

It is true that Mr. Rupp was previously revoked on violations 1-6 and the founded violations presently before the Court are violations 7, 8, 11, and 13. Contrary to the Defendant's argument, the sanctions contemplated by Judge Strand's R&R are for violations 7, 8, 11, and 13. In his Report and Recommendation, Magistrate Strand stated that this is Mr. Rupp's second revocation and the fact that Mr. Rupp has previously been revoked on violations 1-6 is a factor considered by the Court. The Report and Recommendation merely acknowledges that the prior violations were founded, Mr. Rupp

16

was sanctioned for them and now Mr. Rupp has committed a series of additional violations.  This is no different than using criminal history points to determine an appropriate sentence in an original prosecution.  Thus, even if double jeopardy attached to revocation proceedings (it does not) there still would be no violation.

The Court finds that Mr. Rupp's objections, as set out in Docket No. 90, are not founded.  Instead, after considering the statutory factors set out in 18 U.S.C. § 3583(e) and 18 U.S.C. § 3553(a), the Court is persuaded that the Magistrate's conclusions are appropriate and hereby adopts the Magistrate's Report and Recommendation.

Finally, Mr. Rupp argued that he should be appointed a new probation officer if his supervised release is extended.  The Court defers to the U.S. Probation office regarding these types of issues.  Accordingly, the Court will take no action on Mr. Rupp's request.

**V. CONCLUSION**

Defendant's Motion to Dismiss, Docket No. 86, is **DENIED**.  The Magistrate's Report and Recommendation, Docket No. 89, is

17

**ACCEPTED**. Mr. Rupp is sentenced to 6 months incarceration with one year of supervised release to follow.

**Mr. Rupp will surrender himself to the U.S. Marshal's Office at 1:00 p.m. on Friday, April 10, 2015.**[7]

**IT IS SO ORDERED** this 6th day of April, 2015.

                                           */s/ Donald E. O'Brien*
                                           Donald E. O'Brien, Senior Judge
                                           United States District Court
                                           Northern District of Iowa

---

[7] The U.S. Marshal's Office is located within the U.S. Courthouse and Federal Building, 320 6th Street, Sioux City, Iowa.